IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANGELA S.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 19 C 1199 |
| v. | ) |
| | ) Magistrate Judge Beth W. Jantz |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security,[2] | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Angela S.'s application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion to reverse the decision of the Commissioner of Social Security [dkt. 24, Pl.'s Mot.] is denied, and the Commissioner's motion for summary judgment [dkt. 32, Def.'s Mot.] is granted.

---

[1] In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by her first name and the first initial of her last name.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner Kilolo Kijakazi has been substituted for her predecessor.

**BACKGROUND**

I.   **Procedural History**

On June 19, 2012, Plaintiff filed a claim for DIB and SSI, alleging disability since June 1, 2011, due to affective disorder, panic disorder, osteoarthritis, diabetes, and hypertension. [Dkt. 11-1, R. at 601.] Plaintiff's claim was denied initially and upon reconsideration, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on April 1, 2014. [R. at 37-102.] Plaintiff personally appeared and testified at the hearing and was represented by counsel. [R. at 39-80.] Vocational expert ("VE") Julie Lenvose also testified. [R. at 81-92.] On May 28, 2014, the ALJ initially denied Plaintiff's claim for benefits, finding her not disabled under the Social Security Act, and the Appeals Council then denied Plaintiff's request for review. [R. at 20-32, 1-3.] Plaintiff appealed that unfavorable decision to this Court, and the Court remanded the case by agreement of the parties for further proceedings. [R. at 744-57.] Following remand, on September 27, 2018, the ALJ held another hearing, at which Plaintiff again personally appeared and testified and was represented by counsel. [R. at 602, 666-717.] VE Grace Gianforte also testified. [R. at 683-717.] The ALJ cited that, at the hearing, Plaintiff testified that she began suffering from anxiety in September 2001 following the terrorist attacks. [R. at 608.] On March 8, 2019, the ALJ issued a decision finding that Plaintiff became disabled on April 16, 2015, and awarding SSI benefits for the period beginning on that date but denying both SSI and DIB benefits for the period prior to April 16, 2015. [R. at 601-17.] The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017).

**II.     The ALJ's Relevant Decision**

The ALJ analyzed Plaintiff's claim in accordance with the Social Security Administration's five-step sequential evaluation process. [R. at 601-17.] The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of June 1, 2011. [R. at 604.] At step two, the ALJ concluded that Plaintiff had the following severe impairments: osteoarthritis, depression, and anxiety. [R. at 604.] The ALJ concluded at step three that her impairments, alone or in combination, do not meet or medically equal one of the Social Security Administration's listings of impairments (a "Listing"). [R. 604-08.] Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work except that she (1) "is unable to work at heights or frequently climb ladders," (2) "would be unable to carry out detailed and complex job instructions," (3) "is limited to simple, routine tasks involving no more than simple, short instructions and simple work-related decisions, with few workplace changes," and (4) "may only have casual interaction with the general public." [R. at 608.]

At step four, the ALJ concluded that Plaintiff would be unable to perform her past relevant work as a telephone order clerk. [R. at 614.] At step five, based upon the VE's testimony and Plaintiff's age, education, work experience and RFC, the ALJ concluded that, prior to April 16, 2015 (so the period for which benefits were denied), Plaintiff could perform work as a stock checker, cafeteria attendant, and clerical stock checker, leading to a finding that she was not disabled prior to April 16, 2015 under the Social Security Act. [R. at 615-17.] Because Plaintiff's age category changed on April 16, 2015, the ALJ determined that Plaintiff became disabled under the regulations as of that date. [R. at 616.]

**DISCUSSION**

I.  **Judicial Review**

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a five-step inquiry, asking whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the RFC to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a). "A finding of disability requires an affirmative answer at either step three or step five." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Id*.

Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation omitted). "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or

reconsidering facts or the credibility of witnesses." *Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014). While this review is deferential, "it is not intended to be a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The Court will reverse the ALJ's finding "if it is not supported by substantial evidence or if it is the result of an error of law." *Id.* at 327.

The ALJ also has a basic obligation to develop a full and fair record, and to "build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837. Although the ALJ is not required to mention every piece of evidence in the record, the ALJ's analysis "must provide some glimpse into the reasoning behind [his] decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The ALJ "must explain [the ALJ's] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe*, 425 F.3d at 351).

**II. Analysis**

Plaintiff raises three arguments challenging the ALJ's decision: (1) the ALJ erred in relying on the VE's testimony which, in her view, conflicted with the Dictionary of Occupational Titles ("DOT") when determining that Plaintiff could perform work as a stock checker, cafeteria attendant, and clerical stock checker; (2) the ALJ erred in weighing the medical opinion of Plaintiff's treating psychiatrist; and (3) the ALJ erred in assessing Plaintiff's subjective allegations. [Dkt. 24, Pl.'s Mot., at 6-19.] After reviewing the record and the briefs submitted by the parties, this Court disagrees with Plaintiff's arguments.

## A. Alleged Conflict between DOT and VE's Testimony

Plaintiff first argues that the ALJ erred in his step-five finding that there existed a significant number of jobs in the national economy that Plaintiff could perform because he relied on the VE's testimony, which Plaintiff argues conflicted with the DOT. [Dkt. 24 at 7-9.] Plaintiff contends that the jobs the ALJ concluded she could perform—stock checker, cafeteria attendant, and clerical stock checker—required GED "level two reasoning skills" in the DOT, which require the ability to carry out "detailed but uninvolved written or oral instructions," and that description conflicted with the VE's testimony that someone who was unable to carry out "detailed or complex job instructions" and was limited to "simple, short instructions," *see* [R. at 692], could perform these jobs. [Dkt. 24 at 7-9.] This Court, however, concludes that there was no apparent conflict between the VE's testimony and the DOT, and thus the ALJ appropriately considered the VE's testimony at step five.

An ALJ has an "affirmative responsibility" to ask whether a VE's evidence "conflicts with information provided in the DOT" before relying on that evidence. SSR 00-4P, 2000 WL 1898704, at *4. Only if there appears to be a conflict between the VE's testimony and the DOT does the ALJ have a further responsibility to "obtain a reasonable explanation for the apparent conflict." *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008) (internal quotation marks omitted) (quoting SSR 00-4P, 2000 WL 1898704, at *4). A conflict is apparent if it is "so obvious that the ALJ should have picked up on [it] without any assistance." *Overman*, 546 F.3d at 463.

Here, the ALJ asked the VE during the hearing whether her testimony was consistent with the DOT, and the VE answered that it was. [R. 699.] Further, it was not obvious that a conflict between the testimony and the DOT existed such that the ALJ needed to further

6

investigate. The GED reasoning levels in the DOT focus "on the worker's educational background, not on-the-job requirements." *Givens v. Colvin*, 551 Fed. App'x 855, 863 (7th Cir. 2013); *see* Dep't of Labor, *Dictionary of Occupational Titles*, App. C (4th ed., Rev.1991), available at https://www.dol.gov/agencies/oalj/topics/libraries/LIBDOT. Accordingly, courts in this Circuit have concluded that no precise correlation exists between the DOT's use of "detailed but uninvolved" instructions in describing GED level 2 reasoning and an RFC restriction on "detailed" instructions. *See Vanhphenh S. v. Saul*, No. 18 CV 6121, 2021 WL 1315633, at *4-6 (N.D. Ill. Apr. 8, 2021) (concluding that no conflict was apparent and collecting cases). The Seventh Circuit has likewise rejected challenges to step-five findings on this basis. *See Surprise v. Saul*, 968 F.3d 658, 662-63 (7th Cir. 2020) (declining to find that obvious conflict existed between GED level 2 reasoning and a one-to-three step instruction limit); *Sawyer v. Colvin*, 512 Fed. App'x 603, 610-11 (7th Cir. 2013) (finding no conflict existed and concluding that "even workers who are markedly limited in their ability to understand, remember, and follow detailed instructions might still be able to perform jobs requiring [GED] level 3 reasoning development").

In her reply, Plaintiff argues that the Commissioner—and by extension, the Court—cannot now rely on this reasoning because the ALJ did not rely on it in his decision, and it is therefore impermissible post hoc rationalization. [Dkt. 35, Pl.'s Reply, at 2-4.] That argument is meritless, however. In evaluating whether the ALJ committed an error by *overlooking* the purported conflict, the Court must necessarily look at whether there was an apparent conflict in the first instance. Had Plaintiff raised this conflict in the proceedings before the ALJ, and the ALJ failed to address it, that would arguably be a different matter.

7

No clear conflict existed between the VE's testimony that Plaintiff, who was limited to jobs with "simple, short instructions" instead of "detailed and complex job instructions," [R. at 608], could perform the jobs of stock checker, cafeteria attendant, and clerical stock checker and the DOT's listing of those jobs as requiring GED level 2 reasoning skills. Thus, the ALJ did not error at step five by relying upon the VE's testimony.

### B. Weight of Treating Physician's Opinions

Next, Plaintiff argues that the ALJ erred in assigning "little weight" to the opinions of her treating psychiatrist, Dr. Samina Khattak. [Dkt. 24 at 8-15.] A treating physician's opinion on the nature and severity of a medical condition is entitled to controlling weight if it is "well-supported" by medical findings and "not inconsistent with the other substantial evidence" in the record.[3] 20 C.F.R. § 404.1527(c); *see Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018). If a treating physician's opinion is not given controlling weight, the ALJ must determine what weight it merits by considering the following factors: (1) the length, nature, and extent of the treatment relationship; (2) the frequency of examination; (3) the physician's specialty; and (4) the consistency and supportability of the opinion. 20 C.F.R. § 404.1527(c); *Gerstner*, 879 F.3d at 263. The ALJ "must offer good reasons for discounting the opinion of a treating physician." *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) (internal quotation omitted).

In evaluating Dr. Khattak's opinions and ultimately according them "little weight," the ALJ sufficiently addressed the relevant factors. First, as to the length, nature, and extent of the treating relationship, as even Plaintiff concedes, [dkt. 24 at 10], the ALJ acknowledged that

---

[3] The "treating physician rule" has been rescinded for claims filed after March 27, 2017 "to eliminate the 'controlling weight' instruction." *Kaminski v. Berryhill*, 894 F.3d 870, 874, n.1 (7th Cir. 2018) (comparing 20 C.F.R. § 404.1527(c) (for claims filed before March 27, 2017), with 20 C.F.R. § 404.1527(c) (for claims filed on or after March 27, 2017)).

8

Dr. Khattak was a treating physician and that therefore she likely understood the longitudinal impact of Plaintiff's mental-health conditions on her ability to work. [R. at 613]. Earlier in his decision, the ALJ also noted that Dr. Khattak had examined Plaintiff. [R. at 608.] Regarding the frequency of examination, the ALJ recounted that Dr. Khattak saw Plaintiff every three months and found that Dr. Khattak may not have had the full picture of Plaintiff's condition as Plaintiff received mental-health counseling from other doctors as well during this time. [R. at 612, 614.] Plaintiff is correct that the ALJ never explicitly acknowledged Dr. Khattak's specialty as a psychiatrist, [dkt. 24 at 13], but that failure does not require remand where, as here, the ALJ's decision makes clear that he "was aware of and considered many of the factors." *Schreiber v. Colvin*, 519 Fed. App'x 951, 959 (7th Cir. 2013) (citing *Elder v. Astrue*, 529 F.3d 408, 415-16 (7th Cir. 2008)).

Critically, the ALJ afforded Dr. Khattak's opinions "little weight" because they were not supported by the other record evidence in the case, including Dr. Khattak's own treatment notes. [R. at 612-14.] *See Pavlicek v. Saul*, 994 F.3d 777, 781 (7th Cir. 2021) ("An ALJ may decline to give a treating physician's opinion controlling weight when the opinion is inconsistent with the physician's treatment notes."). In August 2012, Dr. Khattak filled out a "medical report of incapacity," diagnosing Plaintiff with major depressive disorder and agoraphobia with panic disorder and opining that she was permanently disabled since 2011 because she was "unable to function" due to these conditions. [R. at 434-37.] In February 2013, Dr. Khattak indicated on a form evaluation that, among other things, Plaintiff had poor-to-no ability to remember work-like procedures, maintain attention for 2 hours, maintain regular attendance, sustain a routine without special supervision, perform at a consistent pace without an unreasonable number of rest periods, get along with co-workers, and respond appropriately to changes in a routine work setting;

9

Plaintiff had a fair ability to understand and remember very short and simple instructions and carry them out and to make simple work-related decisions. [R. at 468-70.] Dr. Khattak opined that Plaintiff was markedly limited in performing activities of daily living and maintaining social functioning and that she experienced frequent deficiencies in concentration, persistence, or pace. [R. at 469.] Overall, Dr. Khattak diagnosed Plaintiff with major depression, assigned her a GAF score of 45, and explained that she was unable to remain on task and that her affect was flat or restricted. [R. at 468.] Later that year, in September 2013, Dr. Khattak filled out another form indicating that Plaintiff had responded poorly to treatment, which included medication and individual psychotherapy, and was permanently disabled. [R. at 331-33.] Finally, Dr. Khattak also submitted a letter in March 2014, explaining that Plaintiff was "suffering from problems with Attention" and continued to struggle with "getting out of the house and being around people." [R. at 596.]

After summarizing these opinions, the ALJ concluded that "the highly restrictive limitations set forth by Dr. Khattak are not supported by the objective evidence." [R. at 613.] Although Plaintiff's mental status examinations often reflected that she had a depressed mood and paranoid thoughts, the ALJ explained that those same examinations revealed that Plaintiff had intact concentration and attention and that she was cooperative and able to make sensible decisions. [R. at 613; *see* R. 415, 420, 442, 447, 451, 488, 523, 550-51, 575.] Additionally, the treatment notes from Dr. John Canzona, a treating psychologist whom Plaintiff saw approximately twice a month during this same time period, also called into question Dr. Khattak's restrictive limitations. Dr. Canzona frequently reported Plaintiff's mood as depressed but also consistently found that Plaintiff was "fully oriented with sound attention and concentration and no gross distractibility," her "[r]ecent and remote memories appear to be

10

functional," and her "thinking was coherent and relevant." [R. at 612; *see* R. 493, 513, 518-19, 529, 534, 539, 547, 555-56, 560]. In light of these relatively normal examination reports, the ALJ permissibly discounted Dr. Khattak's opinions and, in formulating Plaintiff's RFC, found that Plaintiff had mild limitations in her ability to understand, remember, and apply information and to adapt and manage herself, and moderate limitations in her ability to maintain concentration, persistence, and pace, and to interact with others. [R. at 611-12.] *See Pavlicek*, 994 F.3d at 781-82 (concluding that ALJ appropriately discounted treating physician's opinion where physician's report "described an easily distracted patient with impaired memory and concentration" but mental exam findings "reflected essentially normal cognition").

Much of the evidence Plaintiff marshals to counter the ALJ's reasoning comes from Plaintiff's own subjective reports of her symptoms to the doctors, including her reports of racing thoughts, impaired memory, and social isolation. *See* [dkt. 24 at 12]. The ALJ did outline most of this evidence, however, and often contrasted it to the doctors' reports of intact concentration and memory and appropriate behavior. [R. at 609-12.] Plaintiff also faults the ALJ for not discussing how Dr. Jeffrey Karr's consultative examination of Plaintiff in August 2012, [R. 428-31], factored into the ALJ's weighing of Dr. Khattak's opinion, specifically Dr. Karr's observations about Plaintiff's "low frustration tolerance, limited persistence, cognitive difficulty, and heightened affect," [dkt. 24 at 12], but again the ALJ addressed those findings elsewhere in his decision in discussing why Plaintiff did not meet a Listing and in crafting an RFC, *see* [R. at 606-07, 611-12], and did not need to repeat that same analysis again.

Lastly, Plaintiff argues that the ALJ should have re-contacted Dr. Khattak to obtain an explanation for her opinion. [Dkt. 24 at 13.] But "[a]n ALJ is entitled to evaluate the evidence and explanations that support a medical source's findings . . . [and] need not recontact the source

11

every time she undertakes such an evaluation." *See Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009). There was no need for the ALJ to gather further information from Dr. Khattak concerning her opinions when the ALJ simply could—and did—evaluate them in light of the record.

Plaintiff also contends that the ALJ improperly substituted his own medical judgment for Dr. Khattak's in affording her opinion little weight, [dkt. 24 at 14], but this is not so. The ALJ did not determine on his own what restrictions were warranted, but analyzed the medical evidence, including the other medical opinions, in crafting Plaintiff's RFC. Because the ALJ properly considered the relevant factors and explained why Dr. Khattak's opinions were inconsistent with the record, this Court finds no error in the ALJ's weighing of the treating physician's opinions.

### C. Evaluation of Plaintiff's Subjective Symptom Statements

The Court will overturn the ALJ's evaluation of Plaintiff's subjective statements about her symptoms only if it was "patently wrong." *Summers*, 864 F.3d at 528. The ALJ must support his analysis with "specific reasons supported by the record." *Pepper*, 712 F.3d at 367; *see Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (explaining that patently wrong "means that the decision lacks any explanation or support"). Indeed, the ALJ's analysis of Plaintiff's allegations does not need to be flawless. *Simila*, 573 F.3d at 517.

Plaintiff criticizes the ALJ for concluding that Plaintiff's statements "concerning the intensity, persistence, and limiting effects of [her] symptoms are not fully supported prior to April 16, 2015," arguing that the use of the phrase "not fully supported" is either meaningless boilerplate or heightens the burden of proof by requiring all of Plaintiff's allegations to be fully supported by the evidence in order to credit any of them. [Dkt. 24 at 16-17; Dkt. 35 at 12-14.]

12

The use of boilerplate is problematic, however, only when the ALJ does not otherwise explain the information used to justify his evaluation of Plaintiff's subjective symptoms. *See Pepper*, 712 F.3d at 367-68; *Britt v. Berryhill*, 889 F.3d 422, 426 (7th Cir. 2018); *but see Minger v. Berryhill*, 307 F. Supp.3d 865, 872 (N.D. Ill. 2018) (rejecting use of boilerplate where ALJ might be applying incorrect standard).

Here, however, the ALJ also went through in detail Plaintiff's reports and tied them into his discussion of what mental limitations were warranted earlier in his decision and then referred back to those conclusions later when opining that overall her subjective symptom statements were "not fully supported" by the record. [R. at 605-07, 612.] Additionally, the ALJ did not apply an all-or-nothing approach to Plaintiff's subjective allegations, but rather evaluated them on an individual basis. [R. at 605-07.] Although Plaintiff takes issue with the ALJ's approach, the ALJ evaluated Plaintiff's subjective symptoms in some detail in an earlier part of his decision. For example, the ALJ discounted Plaintiff's reports about her need for reminders, memory lapses, and difficulty following instructions, determining that (1) the report of Plaintiff's aunt established that Plaintiff could follow instructions after reviewing them a few times; (2) Dr. Karr's report established that Plaintiff had "cognitive difficulty" but completed some of the tasks during the consultative exam; (3) Plaintiff's memory was intact during office visits; and (4) Plaintiff behaved appropriately at the hearing before the ALJ. [R. at 605-06.] Accordingly, the ALJ found that Plaintiff was not as limited in her ability to understand, remember, and apply information as her subjective reports would indicate. [R. at 606.]

Similarly, the ALJ recited Plaintiff's reports that her social interaction was limited to phone calls, that she had problems getting along with family and friends and feared these individuals might hurt her or vice versa, and that she isolated herself and avoided going out.

13

[R. at 606.] The ALJ indeed credited this evidence and found it consistent with moderate limitations in interacting with others. [R. at 606.]

Finally, regarding Plaintiff's specific contention that the ALJ did not consider her tendency to have panic attacks in crowds, [dkt. 24 at 17], the ALJ did mention this report and implicitly credited it when he ultimately concluded that Plaintiff should be limited to no more than occasional exposure to the general public, [R. at 611-12].

Plaintiff also faults the ALJ for relying on her treatment history, specifically her lack of hospitalization and emergency-room visits, and for failing to credit her for the strong medications she took to treat her symptoms. [Dkt. 24 at 17-18.] The ALJ, however, properly considered Plaintiff's treatment history, including not only the lack of hospitalizations or emergency-room treatment, but also the consistent treatment of counseling and medication. [R. at 611-12.] *See Simila*, 573 F.3d at 517 (citing 20 C.F.R. § 404.1529(c)(3)(v)) ("[T]he regulations expressly permit the ALJ to consider a claimant's treatment history."); *see also Vanhphenh S.*, 2021 WL 1315633, at *12. This case is not like *Voigt v. Colvin*, 781 F.3d 871, 878 (7th Cir. 2015), on which Plaintiff relies, in which the ALJ disregarded a claimant's symptoms because he concluded they would warrant hospitalization if true; here, the ALJ never equated Plaintiff's symptomology to the need for hospitalization. [R. at 612.] Further, the ALJ did not rely on the treatment history alone to determine the extent to which to credit Plaintiff's subjective symptoms, but instead also looked to the objective findings concerning her ability to cooperate and act appropriately in social situations. [R. at 611-12.]

Accordingly, this Court concludes that the ALJ overall sufficiently explained his reasoning in determining that Plaintiff's subjective symptom statements were not entirely

supported by the record, and thus the decision was not "patently wrong." *Summers*, 864 F.3d at 528.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to reverse the decision of the Commissioner of Social Security [24] is denied, and the Commissioner's motion for summary judgment [32] is granted. The Court affirms the Commissioner's final decision.

**SO ORDERED.**

Dated: 10/7/21

E N T E R:

*[signature]*

BETH W. JANTZ
United States Magistrate Judge

15